David T. Krueck, Bar No. 6246
DKrueck@perkinscoie.com
PERKINS COIE LLP
1111 West Jefferson Street, Suite 500
Boise, Idaho 83702-5391
Telephone:  208.343.3434
Facsimile:   208.343.3232

*Attorney for Petitioners Meta Platforms, Inc.,*
*Instagram, LLC, and WhatsApp LLC*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| META PLATFORMS, INC, INSTAGRAM, LLC, AND WHATSAPP LLC., <br><br> *Petitioners,* <br><br> v. <br><br> NAMECHEAP, INC. and WHOISGUARD, INC. <br><br> *Respondents.* | Case No. <br><br> **MEMORANDUM IN SUPPORT OF PETITION TO QUASH SUBPOENA** |

COME NOW Petitioners Meta Platforms, Inc., Instagram, LLC, and WhatsApp LLC ("Plaintiffs"), by and through their counsel of record David T. Krueck of the firm Perkins Coie LLP, and hereby submit this Memorandum in Support of Petition to Quash Subpoena.

### INTRODUCTION

This Petition arises out of litigation pending in the United States District Court for the District of Arizona styled as *Meta Platforms, Inc. v. Namecheap, Inc., et al.*, No. 2:20-cv-00470-GMS ("Arizona Case"). As part of that litigation, Namecheap, Inc. ("Namecheap") and Whoisguard, Inc. ("Whoisguard") (collectively, "Defendants") are seeking the production of documents and electronically stored information from non-party Focus IP Inc. d/b/a AppDetex

("AppDetex") pursuant to a subpoena dated January 14, 2022 (the "Subpoena"). A true and correct copy of the Subpoena is attached as Exhibit A to the Declaration of David T. Krueck in Support of Petition to Quash Subpoena ("Krueck Decl."), filed concurrently herewith.

Focus IP Inc. is a Delaware corporation authorized to do business in the state of Idaho under the assumed business name of AppDetex, with its principal place of business in Boise, Idaho.

## BACKGROUND

Plaintiffs brought the Arizona Case against Defendants to enforce their trademark rights and protect the public from malicious domain names. Defendants[1] have registered, trafficked in, or used domain names ("Infringing Domain Names") that are identical or confusingly similar to trademarks and service marks in which Plaintiffs own exclusive rights ("Plaintiffs' Marks"). (*See* Order Denying Motion to Dismiss (D. Ariz. No. 2:20-cv-470-GMS, Doc. 52 at 2–3) (attached as Exhibit B to Krueck Decl.).) The Infringing Domain Names include facebo0k-login.com, facebok-security.com, 1nstagrambusinesshelp.com, instagramlogin.org, whatapp.services, whatsappsex.club, and others that were used for unlawful activities, including phishing, malware, spam, fraud, and trademark infringement.

Specifically, Plaintiffs sued Defendants for cybersquatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), trademark infringement under 15 U.S.C. §§ 1114 and 1125(a), false designation of origin under 15 U.S.C. § 1125(a), and trademark dilution under 15 U.S.C. § 1125(c). *Id*. To prove an ACPA claim, a trademark owner must establish, "(1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the

---

[1] Namecheap is an Internet Corporation for Assigned Names and Numbers ("ICANN") accredited registrar. Whoisguard is a proxy service established by Namecheap that was used exclusively by Namecheap's customers to hide their identities.

owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit." *DaimlerChrysler v. The Net Inc.,* 388 F.3d 201, 204 (6th Cir. 2004).

In addition, Plaintiffs have alleged that, under ICANN-mandated language in the Namecheap Registration Agreement, Defendants accepted liability for the harm caused by the wrongful use of the Infringing Domain Names because Defendants failed to disclose the contact information of their customers in response to Plaintiffs' notices of infringement. When a customer selects a domain name for registration with Namecheap, Namecheap by default enrolls customers into a proxy service whereby Namecheap's alter ego, Whoisguard, registers the domain name in Whoisguard's own name, on behalf of the customer, and then licenses use of the domain name back to the customer. (Order Denying Motion to Dismiss at 1–2; First Amended Complaint ("FAC") ¶¶ 7–13, (attached as Exhibit C to Krueck Decl.).) As the domain name registrant, Whoisguard's name, not the name of the customer, is listed in the public WHOIS record, a directory that lists the identity and contact information of the registrant of a domain name. (Order Denying Motion to Dismiss at 2; FAC ¶¶ 17–18.) In registering domain names, Whoisguard agrees to "accept liability for harm caused by wrongful use of the [domain name], unless it discloses the current contact information provided by the licensee and the identity of the licensee within seven (7) days to a party providing the Registered Name Holder reasonable evidence of actionable harm." (Order Denying Motion to Dismiss at 2–3, 6–7 ("Drawing all reasonable inferences in favor of Plaintiffs, the Registration Agreement plausibly incorporates Section 3.7.7.3 and WhoisGuard plausibly made itself liable pursuant to the section for the infringements of the Domain Name Licensees when it failed to disclose the identity of the Infringing Domain Name licensees.").)

On January 14, 2022, Defendants subpoenaed AppDetex, a non-party that provides trademark enforcement services to Plaintiffs, with twenty requests for various documents and

communications. (Subpoena at 4–7.) These requests are unreasonable, unduly burdensome, overbroad, seek information that is not relevant to the underlying litigation, and seek work product that is protected from discovery pursuant to Fed. R. Civ. P. 26(b)(3). Specifically, the Subpoena requests twenty categories of documents and communications fishing for information to try to show that AppDetex disingenuously reported notices of infringement to Defendants and others. Such information, however, would not be a defense to Defendants' acts of cybersquatting and trademark infringement. Such documents or communications—assuming, generously, that they even exist—are irrelevant to whether Plaintiffs' Marks are valid and entitled to protection; whether Plaintiffs' Marks are distinctive or famous; whether the Infringing Domain Names are identical or confusingly similar to, or in the case of famous marks, dilutive of, Plaintiffs' Marks; whether Defendants used, registered, or trafficked in the Infringing Domain Names with the bad faith intent to profit; whether Defendants used the same or similar marks in commerce; or whether Defendants' use of Plaintiffs' Marks is likely to cause confusion.

With respect to Infringing Domain Names for which Defendants have agreed to accept liability for harm, the fact that Plaintiffs notified Defendants of the infringement—and Whoisguard's failure to promptly disclose licensees' identities and contact information—is relevant to prove Plaintiffs' claims. As a trademark enforcement service provider for Plaintiffs, AppDetex sent some of the notices of infringement at issue in the Arizona Case to Whoisguard. But this information has already been provided to Defendants by Plaintiffs. (Declaration of Steven E. Lauridsen ("Lauridsen Decl.") ¶ 3 (listing FB_NAME_00001112 through FB_NAME00021244, FB_NAME_00031011 through FB_NAME_00035488, FB_NAME_00051067 through FB_NAME_00051120, and FB_NAME_00051239 through FB_NAME_00052137 as Bates numbers for documents provided by AppDetex to Plaintiffs and

subsequently produced by Plaintiffs).) Otherwise, the information sought in Defendants' Subpoena is not relevant to any claim or defense in the matter and is therefore not subject to discovery. Requesting irrelevant information in a subpoena subjects non-party AppDetex to an undue burden. Moreover, the requests seek information protected from discovery by the work product doctrine.

## LEGAL STANDARD

Rule 45(d)(3)(A) of the Federal Rules of Civil Procedures provides that a court must quash a subpoena that requires disclosure of privileged or protected matter or subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv). As "the court for the district where compliance is required," this Court has authority to decide a motion to quash the Subpoena. *See* Fed. R. Civ. P. 45(d)(3)(A)–(B); *see also La Fosse v. WinCo Foods, LLC*, No. 1:21-MC-00594-BLW, 2021 WL 4557207, at *1 (D. Idaho Oct. 4, 2021).

## ARGUMENT

### A.      The Subpoena is unduly burdensome.

The Subpoena is unreasonable, unduly burdensome, overbroad, and seeks information that is not relevant to the underlying litigation. The document requests in the Subpoena are unreasonable on their face and unreasonable in light of the limited issues in the Arizona Case for which AppDetex may have information. A court must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).

*First,* this Court "does not like to burden third parties [with subpoenas] unless absolutely necessary." *Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*, No. 4:16-CV-00427-DCN, 2017 WL 4839375, at *3 (D. Idaho Oct. 26, 2017); *accord Pegatron Tech. Serv., Inc. v. Zurich Am. Ins. Co.*, 377 F. Supp. 3d 1197, 1203 (D. Or. 2019) ("Courts are particularly reluctant to require a nonparty to provide discovery that can be produced by a party." (citing *Dart Indus.*

*Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980))). "The burden placed on third parties is often much greater than the value of any production." *Saint Alphonsus Health All., Inc. v. Corizon, LLC*, No. 1:18-CV-00183-DCN, 2021 WL 2381794, at *7 (D. Idaho June 10, 2021).

**Second,** the requests seek information that is not relevant to any claim or defense in the Arizona Case. The information sought is therefore not subject to discovery. Rule 26(b)(1) limits the scope of discovery to a "matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Subpoenas issued under Fed. R. Civ. P. 45 are subject to the relevance standard of Rule 26. *See Oyenik v. Corizon Health Inc.*, No. CV-13-1597-PHX-SPL (BSB), 2014 WL 12787872, at *1 (D. Ariz. Nov. 20, 2014) (noting the "relevance standard is heightened in the context of nonparty subpoenas"). Accordingly, courts will quash a subpoena that requests information that is "wholly irrelevant under any reasonable legal theory." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 428 (9th Cir. 2012); *see also Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637–38 (C.D. Cal. 2005) (granting motion to quash and noting that "[a]lthough irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena" because "evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party").

Here, the Subpoena seeks information that is not relevant to the underlying action. The issuing party has the burden of demonstrating that the information sought is relevant and material to the allegations and claims at issue in the proceedings. *See Rocky Mountain Med. Mgmt., LLC v.*

*LHP Hosp. Grp., Inc.*, No. 4:13-CV-00064-EJL, 2013 WL 6446704, at *2 (D. Idaho Dec. 9, 2013). The Arizona Case is a straightforward cybersquatting and trademark infringement dispute. Defendants have not demonstrated—and cannot demonstrate—that documents in the possession or control of a nonparty relieve Defendants from liability for cybersquatting and trademark infringement.

**B.      The Subpoena seeks documents protected from discovery by the work-product doctrine.**

Defendants also seek many categories of documents and communications that reflect Plaintiffs' trademark enforcement strategy and processes, including Plaintiffs' and AppDetex's evaluation of whether a domain name infringes on Plaintiffs' Marks. Such documents are protected from discovery by the work-product doctrine, codified in Fed. R. Civ. P. 26(b)(3), and a subpoena for such documents must be quashed under Fed. R. Civ. P. 45(d)(3)(A)(iii). The work-product doctrine limits "discovery of 'documents and tangible things' prepared by a party or his or her representative in anticipation of litigation or trial." *Pollock v. Nationwide Mut. Ins. Co.*, No. 1:19-CV-00304-CWD, --- F. Supp. 3d ----, 2021 WL 3007250, at *10 (D. Idaho July 15, 2021) (quoting *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989)) "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case," and protects both "material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *see also United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (citing *Nobles*). To qualify for work-product protection, documents must: (1) be "prepared in anticipation of litigation or for trial" and (2) be prepared "by or for another party or by or for that other party's representative." *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004).

Here, Defendants seek information regarding trademark enforcement strategy and processes from Plaintiffs' trademark enforcement service provider, including Plaintiffs' and AppDetex's evaluation of whether a domain name infringes on Plaintiffs' Marks. This information clearly falls within the protection of the work-product doctrine.

## C.   Document Requests Plaintiffs Seek to Quash

By this Petition, Plaintiffs specifically seek to quash the following document requests from the Subpoena, on the following grounds:

- Request Nos. 1–2, seeking documents and communications related to Namecheap or Whoisguard that refer to the Infringing Domain Names, covers the infringement notices sent to Whoisguard, which are already in Defendants' possession. Moreover, Plaintiffs have already produced this information to Defendants. For example, documents bearing Bates numbers FB_NAME_00001112 through FB_NAME00021244, FB_NAME_00031011 through FB_NAME_00035488, FB_NAME_00051067 through FB_NAME_00051120, and FB_NAME_00051239 through FB_NAME_00052137 have been produced (Lauridsen Decl. ¶ 3), and these documents comprise hundreds of notices of infringement and thousands of screenshots of the infringing domain names. Because this information has either already been produced or can otherwise be secured from Plaintiffs, asking for duplicative production from AppDetex imposes an undue burden on a non-party. Beyond infringement notices, this request likely seeks work product that is not subject to discovery pursuant to Fed. R. Civ. P. 26(b)(3)(A).

- Request No. 3, seeking communications with Plaintiffs that refer to Namecheap, Whoisguard, or the Arizona Case, is duplicative of Request Nos. 1–2, likewise imposes an undue burden on a non-party, and likely seeks work product that is not subject to discovery pursuant to Fed. R. Civ. P. 26(b)(3)(A).

- Request No. 4, seeking all contracts, agreements, and written understandings between AppDetex and Plaintiffs, does not seek information relevant to any claim or defense in the Arizona Case and therefore imposes an undue burden on AppDetex. This request also likely covers work product that is not subject to discovery pursuant to Fed. R. Civ. P. 26(b)(3)(A).

- Request No. 6, seeking documents regarding AppDetex's past and present business and corporate relationship with Plaintiffs, does not seek information relevant to any claim or defense in the Arizona Case and therefore imposes an undue burden on AppDetex. This request also appears to seek work product that is not subject to discovery pursuant to Fed. R. Civ. P. 26(b)(3)(A).

- Requests Nos. 9–11, seeking communications regarding AppDetex sending "bulk" infringement notices or otherwise critical of AppDetex's sending notices regarding infringement, is not relevant to any claim or defense in the Arizona Case, and therefore imposes an undue burden on AppDetex. In particular, such documents would not support any cognizable defense under the ACPA.

- Request No. 12, requesting documents sufficient to identify the process and criteria used before AppDetex sent infringement notices to Defendants on behalf of Plaintiffs, seeks documents that are not relevant to any claim or defense in the Arizona Case, and therefore imposes an undue burden on AppDetex. This request also seeks work product that is not subject to discovery pursuant to Fed. R. Civ. P. 26(b)(3)(A).

- Request No. 13, seeking documents sufficient to describe the investigation and due diligence conducted before AppDetex sent notices of infringement to Defendants on behalf of Plaintiffs, seeks documents that are not relevant to any claim or defense in the Arizona Case, and therefore imposes an undue burden on AppDetex. This request also seeks work product that is not subject to discovery pursuant to Fed. R. Civ. P. 26(b)(3)(A).

- Request No. 14, seeking documents sufficient to identify all individuals at AppDetex and Plaintiffs involved in decision-making processes related to AppDetex's sending infringement notices to Defendants on behalf of Plaintiffs, seeks documents that are not relevant to any claim or defense in the Arizona Case, and therefore imposes an undue burden on AppDetex. This request also seeks work product that is not subject to discovery pursuant to Fed. R. Civ. P. 26(b)(3)(A).

- Request No. 15, seeking documents sufficient to explain how lists of domains of concern are generated by Plaintiffs, seeks documents that are not relevant to any claim or defense in the Arizona Case, and therefore imposes an undue burden on AppDetex. This request also seeks work product that is not subject to discovery pursuant to Fed. R. Civ. P. 26(b)(3)(A).

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court quash the document requests identified above from the Subpoena directed to AppDetex.

MEMORANDUM IN SUPPORT OF PETITION TO QUASH SUBPOENA - 9
155699071.1

DATED:  January 28, 2022.          **PERKINS COIE LLP**

                                   By:*/s/ David T. Krueck*
                                       David T. Krueck, Bar No. 6246
                                       DKrueck@perkinscoie.com
                                       1111 West Jefferson Street, Suite 500
                                       Boise, Idaho 83702-5391
                                       Telephone:  208.343.3434

                                   *Attorney for Petitioners Meta Platforms, Inc.,*
                                   *Instagram, LLC, and WhatsApp LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of January 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

    Brianna Dahlberg
    2029 Century Park East, Suite 450
    Los Angeles, CA 90067
    bdahlberg@romeandassociates.com

    *Attorney for Respondents Namecheap,*
    *Inc., and Whoisguard, Inc.*

                                  */s/ David T. Krueck*
                                  David T. Krueck